IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ROSE NEW                                                                                                  PLAINTIFF

vs.                                                                    CIVIL ACTION NO.  4:13-cv-0013-SAA

COMMISSIONER OF SSA                                                                              DEFENDANT

**MEMORANDUM OPINION**

  Plaintiff Rose new has filed under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying her application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the of the Social Security Act. Plaintiff filed her application on August 25, 2009, alleging disability beginning June 10, 2005. Docket 20, pp. 118-121. The Commissioner denied her application initially on January 20, 2010 and upon reconsideration on May 15, 2009. Docket 20, pp. 70-72, 75-77. Plaintiff filed a request for a hearing on May 18, 2010. Docket 20, pp.78-79. An Administrative Law Judge (ALJ) held the administrative hearing in Greenville, Mississippi on April 12, 2011. Docket 20, p. 45-67. Plaintiff was not represented by an attorney at the hearing. Docket 20, p. 46.

  The ALJ issued an unfavorable decision on May 20, 2011 (Docket 20, pp. 32- 67) and, after reviewing the request for review and the record, the Appeals Council denied her request for review. Docket 20, p. 17-21. Plaintiff filed the instant appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

1

# I. FACTS

Plaintiff was born on September 5, 1963 [Docket 20, p. 63] and was forty-seven years old on the date of the hearing before the ALJ. Docket 20, p. 32-33. She has a high school education and attended one or two semesters of college classes. *Id.* The ALJ found that plaintiff had not engaged in substantial gainful activity from June 2005 until her last date insured of December 31, 2010. Docket 20, p. 34, finding No. 2. Her past relevant work experience was as a billing clerk. Docket 20, p.54. She claimed disability due to rheumatoid arthritis, fibromyalgia and carpal tunnel syndrome. Docket 20, p. 152.

The Social Security Administration sent plaintiff a very explicit letter on June 1, 2010, advising her that she had a right to representation, enclosing a brochure with very thorough explanation of her rights and options. Docket 20, pp. 80-85. The ALJ sent her another, similar letter on March 15, 2011, with the same information. Docket 20, pp. 86-93. Finally the ALJ once again informed plaintiff at the hearing on April 12, 2011, of her right to representation by an attorney for her hearing, that she could receive a continuance to secure representation and that she might qualify for assistance from certain legal services agencies. Docket 20, pp. 47-52. Plaintiff, who was not represented by an attorney at the April 12, 2011 hearing, responded that she had read and understood the two letters setting out her options, but she wished to proceed without counsel at the hearing, and she signed a "Waiver of Representation" at the hearing Docket 20, p. 115. The hearing began at 9:02 a.m. and concluded at 9:30 a.m. Docket 20, pp. 47, 67. Plaintiff, her husband Randy New and a Vocational Expert (VE), Deon Porter, testified at the hearing.

The ALJ determined that plaintiff's "obesity, rheumatoid arthritis, osteoarthritis,

migraines, and fibromyalgia" were "severe" impairments, but that her "medically determinable mental impairment of affective disorder did not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and therefore non-severe" Docket 20, p. 34. The ALJ further found that "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments at listing severity." Docket 20, p. 36. In so finding, the ALJ held that the plaintiff did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). *Id.* After considering the entire record as a whole, the ALJ concluded that plaintiff

> had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except precluded from climbing ladders, but occasionally climb stairs, balance, stoop, bend, crouch, crawl and kneel. Further, she is precluded from exposure to extreme cold temperatures and noise.

Docket 20, p. 36, Finding No. 5.

The ALJ went on to find the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully credible to the extent that they are inconsistent with the residual functional capacity assessment." Docket 20, p. 38. With respect to plaintiff's credibility, the ALJ noted, among other things, that the plaintiff testified that she has fibromyalgia, but the medical record did not reflect a diagnosis by any physician, and there is no medical evidence in the record that could support such a finding. *Id.* In light of testimony by the VE, the ALJ held that plaintiff's "severe" impairments did not prevent her from performing past relevant work as a billing clerk which was a sedentary job (Docket 20, p. 38, Finding No. 6), and plaintiff therefore was "not disabled" under the Act. Docket 20, p. 39, Finding No. 7.

After the ALJ's decision, the plaintiff submitted a request for review. Docket 20, pp. 110-111. After reviewing the file and plaintiff's request, the Appeals Council denied the request

3

for review and concluded that there was no basis for changing the ALJ's decision. Docket 20, p. 15. On appeal plaintiff makes three arguments: the ALJ improperly advised her about her right to an attorney, did not develop the record adequately, and improperly relied on testimony of a VE that referenced the Dictionary of Occupational Titles (DOT), which plaintiff argues is outdated. Docket 26.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[1] *See* 20 C.F.R. §404.1520 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §404.1520(b) (2010).

[4] 20 C.F.R. §404.1620(c) (2010).

[5] 20 C.F.R. §404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525 (2003).

physical and mental demands of her past relevant work.[6]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim.  *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).  The court has limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10]  In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).

---

[6]20 C.F.R. §404.1520(e) (2010).

[7]20 C.F.R §404.1520(g) (2010).

[8]*Muse*, 925 F.2d at 789.

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994);  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff did not engage in substantial gainful activity after the date she filed her application, satisfying step one. Docket 20, p. 34. The ALJ found at step two that plaintiff's obesity, rheumatoid arthritis, osteoarthritis, migraines, and fibromyalgia are severe impairments [Docket 20, pp. 34-36] and, at step three, that the plaintiff's impairments did not meet the stringent requirements set out in the listings.[11] Docket 20, pp. 36. Next, the ALJ determined that the plaintiff had the residual functional capacity to perform light work with specific limitations. Docket 20, pp. 36-38. In addition, the ALJ found that the plaintiff's subjective statements were "not fully credible." Docket 20, p. 38. At step four, the ALJ found that the plaintiff previously worked as a "billing clerk, sedentary exertion, semi-skilled." *Id.* Relying on the testimony of the VE, the ALJ determined that because plaintiff could, at all times relevant to the cause,

---

[11] Plaintiff must prove by objective medical evidence at step three that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing).

perform her past relevant work as it was actually and generally performed, she was not disabled under the Act. *Id*. At 39.

1. Right to Counsel

A claimant at a Social Security hearing has a statutory right to counsel. 42 U.S.C. § 406; *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir. Unit B July 1981); *Norden v. Barnhart,* 77 Fed. Appx. 221, 223 (5th Cir.2003). The claimant must be notified of this right. *Clark,* 652 F.2d at 403. "[N]otice should generally be provided in writing prior to a hearing. The ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se . . . has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Gullett v. Chater,* 973 F.Supp. 614, 621 (E.D.Tex.1997) (citation omitted); *see also Norden,* 77 Fed. Appx. at 223. The magistrate judge in *Gullett* opined that an ALJ should also inquire whether the claimant had a meaningful opportunity to secure counsel and, if not, consider adjourning the hearing to provide that opportunity. *Gullett*, 973 F. Supp at 621.

A claimant may waive her statutory right to counsel if she possesses adequate information to enable her "to decide intelligently whether to retain counsel or proceed pro se." *Norden,* 77 Fed. Appx. at 223. However, "[i]f inadequate notice was provided concerning the scope of the claimant's right, [the] waiver will be deemed invalid." *Gullett v. Chater,* 973 F.Supp. 614, 620 (E.D.Tex.1997). Thus, the ALJ must notify the claimant of (1) "the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of the fees." *Id.*, citing *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir.1981); *see Norden,* 77 Fed. Appx. at 223.

Nevertheless, an invalid waiver of the right to counsel, by itself, will not merit reversal of an ALJ's decision. *Castillo v. Barnhart,* 325 F.3d 550, 552 (5th Cir.2003). A claimant must also show she suffered prejudice or unfairness because of the lack of counsel, *Clark*, 652 F.2d at 399, or produce evidence that "would have been adduced ... that could have changed" the ALJ's decision if the claimant had been represented by counsel. *Johnson v. Astrue,* 326 Fed. Appx. 737, 740. (5th Cir.2009) (if Johnson had counsel, and counsel had called witnesses to corroborate the severity of his symptoms, this could have changed the ALJ's decision); *see also Castillo,* 325 F.3d at 552.

In this case, it is undisputed that plaintiff was notified of her right to representation, and she does not challenge the adequacy of the pre-hearing notice. When plaintiff was notified that her claim had been denied on January 20, 2010, the denial letter also stated:

> IF YOU WANT HELP WITH YOUR APPEAL
> You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win you appeal. Your local Social Security office has a list of groups that can help you with your appeal.
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

Docket 20, p. 71. In addition, after plaintiff requested a hearing before an ALJ, the pre-hearing notice explained as follows:

> **Your Right to Representation**
> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it. We are enclosing a list of

8

groups that can help you find a representative.

Docket 20, pp. 80-81.

However, plaintiff argues that her waiver of counsel was invalid because at the hearing the ALJ failed to advise her that "attorneys work on a contingency basis of 25% of past due benefits" and further because the ALJ "provided counsel" to plaintiff, she did not provide a legal waiver of her right to representation. Docket 26, p. 13. At the beginning of the hearing the ALJ had the following exchange with the plaintiff:

> ALJ: . . . . Ms. New, I wanted to explain to you your various options. You could ask for a postponement to get an attorney or representative. You're entitled to do that. If you cannot afford an attorney there are some agencies that you may qualify for. I don't know what their qualifications are. You don't have to have a representative, you can just simply go forward on your own. And, you know, I will try to help make sure that you have everything you need. What do you think you might want to do, m'am?
> CLMT: I'm not sure.
> ALJ: Oh, have you talked to an attorney or anybody?
> CLMT: No, I haven't. I have read where I could have one. I didn't know what to expect today. And my husband, who lives with me, can tell you more than the doctors can, the lawyers can. And I didn't really know if the lawyer was just to speak on my behalf or because of the legal terms, you know, that – I don't know, I can –
> ALJ: Anything –
> CLMT: I just don't know what to do.
> ALJ: Anything that you don't understand I'll be glad to try to explain to you.
> CLMT: So what would be the benefit of having an attorney or representative?
> ALJ: Well, some people feel that they're not able to clearly explain their situations.
> CLMT: Oh, I can explain, I live through it every day.
> ALJ: Okay. Sometimes people feel that they're not able to collect all the information that they need and they want the lawyer to do that for them.
> CLMT: Well, all of the information you should already have because I haven't been through any certain testing or anything since I filed. There's been maybe a couple of changes on my medication. A couple of x-rays on my knees. But other than that there's not been anything really different that's been going on –
> ALJ: Yes, m'am.
> LMT – so
> ALJ: Well, you know, I don't really like to tell people which way to go because really –

9

CLMT: Right.
ALJ: I, I, all I can say is, you know, I read the filed, I go through it –
CLMT: Right.
ALJ: – you know. If you have the need to get some additional information, the agency will help you do that. It's just whether you feel comfortable going ahead and speaking on your own.
CLMT: So does it have any bearing on what the outcome would be?
ALJ: Absolutely not.
CLMT: Okay. Now –
WTN: Honestly, I don't know that the lawyer know that you don't.
CLMT: Right. At this –
ALJ: Let me, let me make sure I've answered your question properly. It doesn't matter, I'm the one that's going to make the decision.
CLMT: Right.
ALJ: And it does – I have paid people who have not been represnted. I've paid people who have been represented. I've turned people down both ways as well so –
CLMT: Right.
ALJ: – the fact that you have an attorney or representative is not important to me. All I'm interested in is what are the facts of the case.
CLMT: Right.
ALJ: And –
CLMT: Well, I kind of –
WTN: The way that an attorney would represent it to you is irrelevant, it's the just facts (INAUDIBLE).
CLMT: Well, that was what I was thinking in my mind when I said I'll just see how it goes because I mean it's like kind of like skipping the middle man to me.
ALJ: Yes, m'am.
CLMT: You know –
ALJ: Yes, ma'am.
CLMT: – and so for that reason I thought I wouldn't. Now if I get denied –
ALJ: You have, you have the right to appeal. Let me explain those rights to you. If you get denied, there are actually two levels of appeal. The first level is what they call the Appeals Council. You can go to them and they may decide that something was not done properly, it wasn't, the decision wasn't made properly. They can send it back for a new trial at that time you can go alone or you can have an attorney at that point.
CLMT: Okay.
ALJ: If they should turn you down you can appeal to the District court.
CLMT: Okay.
ALJ: And, again, if they decide that its been wrong they'll send it back down in all likelihood.
CLMT: Okay.
ALJ: There's all of that.
CLMT: It makes – I understand, I mean I have kind of read up on some of this so I understand what you're saying. I would just prefer to go through without having an

> attorney and –
> ALJ: Oh, all right.
> CLMT: – see what happens from there.
> ALJ: Yes m'am. Well, what I'm going to do is I'm going to read the Waiver of Representation that you'll need to sign –
> CLMT: Okay
> ALJ: – and if you have any questions about it let me know.
> CLMT: Sure.
> . . . .
> ALJ: Waiver of representation, I hereby freely, voluntarily, and intelligently waive and give up my right to be represented at the hearing I requested before the Administrative Law Judge. It has been explained to me and I fully understand that it is my right to have attorney or other representative with me at the hearing if I so choose. I further understand that if I wish to retain an attorney but am financially unable to retain an attorney of my choice I may qualify for free legal services provided by one or more Legal Aide organizations. It has also been explained to me that I am not required to have a representative at the hearing and that I will receive the same full and fair hearing which is given to every claimant whether represented or not. I decided to go forward with my hearing without a representative. And that's what you would sign. So if you would give that to her, please.
> HA: You can sign at the bottom.
> CLMT: Okay.

Docket 20. pp. 47-51.

This lengthy quotation of the record is simply to demonstrate that the ALJ did explain to plaintiff at the hearing (1) the manner in which an attorney can aid in the proceedings, and (2) the possibility of free counsel, but she did not explain there was (3) the possibility of a contingency arrangement, and the limitation of attorney fees to 25% of past due benefits and the required court approval of the fees. Plaintiff argues that the ALJ's failure to ask her if she understood that attorneys work on a contingency basis of 25% of the past due benefits means that the ALJ did not provide sufficient information for her to decide how to proceed. *Clark v. Schweiker,* 652 F.2d 399, 403. Even assuming plaintiff's waiver of her right to counsel was invalid, however, she still must show prejudice by "pointing to evidence that would have been adduced and that could have changed the result had [the claimant] been represented by counsel." *Brock,* 84 F.3d at 729, n. 1

11

(5th Cir.1996).

According to plaintiff, she was prejudiced in that (1) she was given a copy of the disc at the hearing, which she was told contained all her medical records and which was place in evidence as such, but the hearing proceeded without allowing her time to view the records or ascertain whether all of her records were included in the evidence; (2) there are actually records that exist that were not obtained by the ALJ despite assurances that the Social Security Administration would aid plaintiff in obtaining her records; (3) the ALJ posed hypothetical questions to the VE as to which an attorney would have been able to either make objections or cross-examine the VE regarding the objectionable aspects of the questions; and (4) the agency never contacted plaintiff's treating physician to obtain updated medical records.

The Commissioner relies upon *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) in disputing plaintiff's lack of notice claim. In *Castillo* the plaintiff acknowledged that she was told that she could be represented during the proceedings by an attorney, but she asserted that she was not adequately informed of relevant facts related to obtaining a representative. *Id*. The Fifth Circuit concluded that "the numerous written notices Castillo received – along with the ALJ's reminder to Castillo at the hearing of her right to counsel – sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation." *Id.* Furthermore, the court held that "even if Castillo had validly waived her right to an attorney, she 'point[ed] to no evidence that would have been adduced and that could have changed the result had' [she] been represented by an attorney, and therefore has not demonstrated that she was prejudiced due to the absence of counsel at the hearing." *Id.*

In this case, it is clear that plaintiff received at least three notices before the hearing

explaining her right to representation, the benefits of such representation and the likely cost. At the hearing itself, the ALJ discussed with her the right to have a lawyer at the hearing and that she could delay the hearing to allow plaintiff to secure counsel. However, she did not explain the possibility that counsel's fee would be limited. Even assuming that this deficit is sufficient to invalidate the plaintiff's waiver of her right to counsel, even to date, the plaintiff has never provided any medical records or other evidence that would go to prove her disability or support her arguments, nor has she proffered what those records, if obtained, might prove. Plaintiff has been represented by an attorney since October 2012 [See Docket 20, p. 16], but her counsel has not produced any, much less material, evidence that might change the ALJ's decision.

Review of the record establishes that the ALJ did provide all necessary information to plaintiff for her to intelligently make a decision regarding her right to counsel. Although the ALJ did not specifically state at the hearing that an attorney's fees are limited to a contingency fee, that information was contained in the pre-hearing information provided by the Commission. Accordingly, the court holds that the plaintiff's waiver of her right to counsel at the hearing was valid, and proceeding without an attorney at her hearing was not reversible error.

    2.    <u>Duty to Develop the Record</u>

The ALJ concluded plaintiff has "severe" impairments, including obesity, rheumatoid arthritis, osteoarthritis, migraines, and fibromyalgia. Docket 20, p.34, Finding No. 3. Nevertheless, at step three of the sequential evaluation process the ALJ found that the plaintiff's limitations did not meet or equal any impairment listed at 20 C.F.R. pt. 404, subpt. P, Appx. 1. Docket 20, p. 36, Finding No. 4. The ALJ reviewed the medical records as a whole, considered the credibility of the plaintiff's subjective complaints, engaged in a detailed discussion of the plaintiff's symptoms and

13

factors considered in determining credibility, and appropriately reviewed the plaintiff's vocational abilities. She determined at step four that the plaintiff retains the RFC to perform light work, except that she is precluded from climbing ladders, but may occasionally climb stairs, balance stoop, bend, crouch, crawl, and kneel, and is precluded from exposure to extreme cold and noise. Docket 20, p. 36, Finding No. 5. Relying on the testimony of a vocational expert, the ALJ determined that the plaintiff was capable of performing her past relevant work as a "billing clerk, sedentary exertion, semi-skilled." Docket 20, p. 38, Finding No. 6. Accordingly, the ALJ found that plaintiff was not disabled under the Act. Docket 20, p. 39, Finding No. 7.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because she failed to meet the heightened duty to develop the record fully and fairly, particularly in light of the plaintiff's *pro se* status. According to plaintiff, who is now represented by counsel, the ALJ erred in that she did not allow the plaintiff sufficient time to review the disc containing medical records and failed to acquire and consider additional medical evidence from Chester Jenkins, M.D., plaintiff's rheumatologist and Diane Morgan, CFNP[12], plaintiff's source of primary care.[13] However, the transcript demonstrates that the ALJ specifically directed the plaintiff to "look at the disc and make sure we have everything that we are supposed to have" after the hearing was over and "if something isn't there then let us know so we can get that added." Docket 20, pp. 51-52. As for the need for an attorney to obtain all her records, plaintiff had already told the ALJ

---

[12] A nurse practitioner is not considered an "acceptable medical source" under social security regulations. 20 C.F.R. §§404.1520(a), 404.1502.

[13] The record does contain medical records from Chester Jenkins, M.D. (Docket 20, pp 221-224) and from Edith Diane Morgan, CFNP (Docket 20, pp 241-258). These records are from 2008-2009.

14

> [A]ll of the information you should already have because I haven't been through any certain testing or anything since I filed. There's been maybe a couple of changes on my medication. A couple e-rays on my knees. But other than that there's not been anything really different that's been going on – . . . .

Docket 20, p. 48.

Although an ALJ does have a heightened duty to completely explore all relevant facts, the Fifth Circuit has held that to obtain reversal of ALJ's decision for failing to fulfill this duty, the plaintiff must establish both that the ALJ failed to fully develop the record and that she was prejudiced as a result. *Brock v. Chater,* 84 F.3d 726 (5th Cir.2003); *Castillo,* 325 F.3d at 552. To establish prejudice plaintiff must show that counsel "could and would have adduced evidence that might have altered the result." *Brock* at 728. As stated above, even now plaintiff not only has failed to submit records of these physicians, she has failed even to suggest what additional evidence these records might establish.

In this case, plaintiff is currently represented by counsel. Counsel has offered no additional objective evidence to show plaintiff's limitations due to arthritis, obesity, fibromyalgia or other impairment or combination of impairments. Despite several extensions of time at both the appeals level and before this court, and months during which the plaintiff could have gathered evidence, plaintiff merely offers the otherwise unsupported argument that if the ALJ had obtained the records, she would have seen the amount of weight the plaintiff had gained and she could have gotten a medical source statement. Docket 20, pp. 15, 9; Docket 25. She also attempts to support her argument with her subjective complaints through her hearing testimony. Docket 26, pp. 16-17. This is not sufficient to establish a reason to remand this case. *Melvin v. Astrue,* 2010 WL 908495, at *2 (N.D. Miss. Mar. 9, 2010).

The court finds that the ALJ properly relied on the medical records in the file and the

medical examinations of the two consultative examiners that showed no medically observed mental or physical limitations that would limit plaintiff's RFC beyond the limitations determined by the ALJ. *See.* Docket 20, pp 345 - 364, 365-377.

  3.  ALJ's Reliance on the DOT

Under 20 C.F.R. §404.1560(b)(2), the ALJ is entitled to utilize "the services of vocational experts. . . or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity." The Fifth Circuit has held that "the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The court holds that the evidence in the record of this case supports the ALJ's determination that the plaintiff has the RFC to perform light work with few limitations. "The ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey,* v. Apfel, 230 F.3d at 146.

Plaintiff argues that the ALJ should not have relied on the testimony of the VE or the information provided in the DOT because the DOT has not been updated since 1991 and is outdated as it relates to jobs are they exist in today's regional or national economy. Docket 26, p. 20-21. Plaintiff submits that the O*Net "is a widely publicized and supported statistical data center" supported by numerous labor associations, and O*Net should be used as a reliable, current source of information in lieu of the DOT. Docket 26, p. 21. However, O*Net has not been designated as an acceptable source under Social Security Regulations, and the court is not at liberty to substitute its judgment for those regulations. Although O*Net has replaced the DOT in

16

certain Department of Labor arenas, such as public employment services, the Department of Labor admittedly "does not enforce any part of the Social Security program." See Department of Labor public website, at http.//www.oalj.dol.gov/libdot.htm#indexes. Moreover, the plaintiff has not offered any information or evidence that she is unable to perform her past work as determined by the ALJ. As the current social security regulations provide the DOT is an acceptable source, and the court has determined the ALJ properly relied on the testimony of the VE and the evidence in the record, the court finds that the plaintiff's argument is without merit.

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, the court holds that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 23rd day of December, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE